IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31620-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAYTON M. COTTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

Fearing, J. — Clayton Cotter appeals his sentence for the crime of assault. He argues for the first time on appeal that the trial court incorrectly calculated his offender score when the court failed to consider, under RCW 9.94A.525, three crimes committed on the same day as arising from the same criminal conduct. Because we are unable to determine whether Cotter waived this assignment of error, and, if not, whether the three convictions arise from similar criminal misconduct, we remand to the trial court for a further hearing. We reject Clayton Cotter's additional request to strike the legal financial obligations (LFOs) imposed upon him.

## FACTS

On June 27, 2012, Clayton Cotter broke Demetres Perry's arm and nose. At the time of the assault, witnesses saw Cotter holding an object similar to a baseball bat, pipe, pool cue, or stick.

## PROCEDURE

On June 29, 2012, the State of Washington charged Clayton Cotter with second degree assault with a sentence enhancement for use of a deadly weapon. The jury rejected Cotter's self-defense claim and found him guilty. By special verdict, the jury found that Cotter, or an accomplice, was armed with a deadly weapon.

For purposes of sentencing, Clayton Cotter stipulated to seven prior offenses:

| Crime | Date | Type | Adult/Juvenile |
|---|---|---|---|
| First-degree theft | Oct. 8, 2004 | Nonviolent | Juvenile |
| Second-degree escape | Nov. 7, 2004 | Nonviolent | Juvenile |
| Attempted residential burglary | Nov. 11, 2005 | Nonviolent | Juvenile |
| Second-degree theft | Nov. 11, 2005 | Nonviolent | Juvenile |
| Possession of a stolen firearm | Nov. 11, 2005 | Nonviolent | Juvenile |
| Minor in possession | (unknown) | Misdemeanor | Adult |
| City assault | (unknown) | Misdemeanor | Adult |

Clerk's Papers (CP) at 179. On March 30, 2006, a prior court sentenced Cotter for the three crimes that occurred on November 11, 2005.

At the April 2, 2013 sentencing hearing on the current charge of assault, the trial court and counsel discussed Clayton Cotter's offender score:

THE COURT: I have in front of me a criminal history

2

understanding signed by the parties. You calculate then his criminal history as a two?

      [PROSECUTION]: Yeah.

      THE COURT: Technically two and a half, but round down.

      [DEFENSE COUNSEL]: Correct, Your Honor.

Report of Proceedings (RP) at 713.

Defense counsel argued for leniency:

      Your Honor, Mr. Cotter is 22 years of age. He'll be 23 this coming August the 6th. He's lived here in Spokane his entire life. His whole family lives here. At the time of this incident, he was going through a divorce. His child who was then three was living with him until he was arrested on this and was placed with CPS.

      He has a tenth grade formal education through Rogers High School. He had just started a job at Solid Structures. They're in the Spokane area doing construction work when this case came about.

RP at 719.

Clayton Cotter allocuted:

      I'd like the Court to know I did have some juvenile history, but it was seven years ago, and I haven't got in any serious trouble since, and the last three years I spent taking care of my daughter trying to get my life on track, and I just got a job right before I got arrested, and I would just like to get on with my life and continue to get back to my family and continue taking care of my daughter.

RP at 721. The trial court sentenced Cotter to 25 months' confinement, 13 months for the assault based on an offender score of 2, and 12 months for the deadly weapon enhancement.

On April 19, 2013, the court entered a warrant of commitment, instructing the sheriff to deliver Clayton Cotter to the Department of Corrections to serve the remainder

of his 25 month sentence. That warrant credited Cotter with 295 days served. Cotter has already served most, if not all, of his 25 month sentence.

At the sentencing hearing, the State also argued for the imposition of LFOs:

> Regarding financial legal financial obligations, there is a $500 victim assessment, $200 court costs, $100 DNA collection fee, and $8,759.14 in restitution. We do have a restitution schedule that has been handed up, and that's for the VA and then, as well, from AMR.
> We would ask for minimum monthly payments of $25 to start at a date to be suggested by defense.

RP at 718-19.

The trial court asked whether Clayton Cotter had earned his General Equivalency Diploma (GED):

> [THE COURT:] You don't actually have your GED yet?
> THE DEFENDANT: No, I don't.
> THE COURT: I think you should get your GED, too. It'll help you when you get out. It'll help you get a better job.
> There is a $500 victim assessment, $200 in court costs. There's a $100 DNA collection fee. I am going to impose that you not have any criminal law violations, keep in regular contact with the [Department of Corrections] DOC and you do have restitution. This is a lot of restitution. It totals $8,759.14. So you need to either work or go to school pursuant to DOC.
> I am going to include you have to start making minimum monthly payments of $25 a month within at least two months of getting out. DOC may collect, so I'm guessing he's going to get out in 12 months.
> [PROSECUTION]: Maybe a little—yeah.
> [DEFENSE COUNSEL]: The base sentence on 13 he would get four and a third. So that's—
> THE COURT: He's already done about.
> [DEFENSE COUNSEL]: He's got close to month, so there's another 11 months.
> THE COURT: So you got about a year from today.

4

[PROSECUTION]: Yeah.

THE COURT: So set his payment out a year from today. You should be out before then, but you said he has another charge still pending?

[DEFENSE COUNSEL]: Yes. The State has another file that we still have to resolve.

THE COURT: If you don't get out, send a letter. He's going to give you that green piece of paper that will tell you to contact the clerk's office if you're still in or you don't get out right away.

Even if you get out and you can't make a payment, check in with them and let them know. You, also, I'm guessing maybe you have some other fines and costs. You might check in with them and see about making those payments.

Do you have any questions about the sentence, itself?

THE DEFENDANT: No, Your Honor.

RP at 723-25.

The trial court imposed $9,559.14 in LFOs upon Clayton Cotter. Neither Cotter nor his counsel objected to the amount imposed. The trial court instructed Cotter on what to do if he later struggled to pay the obligations.

The judgment and sentence provides:

2.5 **Legal Financial Obligations/Restitution.** The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change.

CP at 187.

The court further ordered:

All payments shall be made in accordance with the policies of the clerk of the court and on a schedule established by the DOC or the clerk of the court, commencing immediately, unless the court specifically sets forth the rate here: Not less than $25.00 per month commencing 4/14/14.

No. 31620-3-III
*State v. Cotter*

CP at 191. The court noted by hand "sooner or by 4/14/14." CP at 191.

## LAW AND ANALYSIS

Assignment of Error 1: Offender Score

Clayton Cotter contends the trial court erred when calculating his offender score because it failed to determine whether three of his prior juvenile convictions constituted the same criminal conduct for purposes of RCW 9.94A.525(5)(a)(i). Clayton Cotter did not raise this issue below. Instead Cotter stipulated to seven prior offenses and an offender score of two. In addition to addressing the substance of Cotter's assignment of error, we must also decide whether he waived the assignment by failing to assert the argument below. Unfortunately, we cannot resolve the waiver issue without first addressing the substance of RCW 9.94A.525, so our discussion of the two subjects proceeds backwards.

RCW 9.94A.525 is a comprehensive statute addressing criminal offender scores, which, in turn, determines the lengths of criminal sentences. Under RCW 9.94A.030(54)(a)(viii), second degree assault, Clayton Cotter's current conviction, is a "violent offense." Subsection (8) of RCW 9.94A.525 thus applies to his offender score and reads:

> If the present conviction is for a violent offense and not covered in subsection (9), (10), (11), (12), or (13) of this section, count two points for each prior adult and juvenile violent felony conviction, one point for each prior adult nonviolent felony conviction, and ½ point for each prior juvenile nonviolent felony conviction.

6

Five of Clayton Cotter's earlier seven convictions were for nonviolent juvenile offenses, which, under the statute, account for .5 of a score each. Applying this subsection, his offender score would be 2.5. The other two convictions, minor in possession and city assault accrue no score. RCW 9.94A.525 specifies that the score be rounded down to the nearest whole number, bringing Cotter's offender score to 2.

On appeal, Clayton Cotter observes that he committed the crimes of attempted residential burglary, second degree theft, and possession of a stolen firearm all on the same day—November 11, 2005. Also a court sentenced him for these three crimes on the same day March 30, 2006. Cotter argues that, instead of incurring 1.5 points for these crimes, he should only accumulate a score of .5 because the three crimes constitute the same criminal conduct under RCW 9.94A.525(5). If the three convictions constituted the same criminal conduct, Cotter's offender score would fall to 1. Instead of 12 to 14 months, his standard range for sentencing would be 6 to 12 months. *See* RCW 9.94A.515 (assigning second degree assault a seriousness of IV); RCW 9.94A.510 (the sentencing grid).

RCW 9.94A.525 provides:

> (5)(a) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
> (i) *Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score.* The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or *prior juvenile offenses for which*

7

*sentences were served consecutively*, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used. The current sentencing court may presume that such other prior offenses were not the same criminal conduct from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations;

. . . .

(b) As used in this subsection (5), "served concurrently" means that: (i) The latter sentence was imposed with specific reference to the former; (ii) the concurrent relationship of the sentences was judicially imposed; and (iii) the concurrent timing of the sentences was not the result of a probation or parole revocation on the former offense.

(Emphasis added.)

We are unable to determine if the three 2005 offenses constitute the same criminal conduct, and, in turn, whether Clayton Cotter was properly sentenced in this case. If the 2006 sentencing court found the three offenses to be the same criminal conduct, that finding binds subsequent sentencing courts. "Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score." RCW 9.94A.525(5)(a)(i). If the 2006 court made such a finding, then the subsequent sentencing court needed to give legal effect to the earlier finding. If such a finding exists, then Clayton Cotter was incorrectly sentenced as a matter of law for his conviction of second degree assault. The appellate record is silent on this point.

8

If the 2006 court made no finding of same criminal conduct, RCW 9.94A.525(5)(a)(i) provides that "[t]he current sentencing court shall determine with respect to . . . *prior juvenile offenses for which sentences were served consecutively,* whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a)." (Emphasis added.) The record also fails to show whether Clayton Cotter served the sentences for the three crimes consecutively or concurrently. Regardless, the "application of the same criminal conduct inquiry involves both factual determinations and the exercise of discretion." *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 495, 158 P.3d 588 (2007).

Now we address waiver. In general, a defendant may challenge a sentencing court's calculation of his offender score for the first time on appeal. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). But "waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *Shale*, 160 Wn.2d at 494. Stated differently, waiver does not apply to sentences that are incorrect as a matter of law, but applies to matters of fact and discretion. Based upon the record before us, we are unable to determine whether Clayton Cotter's challenge to his offender score presents a question of law, on the one hand, or fact or discretion, on the other hand.

Our prior analysis establishes that, if the 2006 sentencing court considered the three November 2005 offenses as being of the same criminal conduct, then the sentencing

in the current case is in the nature of an error of law. If the 2006 sentencing court made no such finding, the correctness of Clayton Cotter's sentence for assault hinges on matters of fact and discretion.

We remand this case for a hearing to determine whether the 2006 sentencing court found the three offenses to constitute the same criminal conduct. If so, we instruct the lower court to give legal effect to that finding, and resentence Clayton Cotter with an offender score of 1.5, which is reduced to 1. If there is no finding of same criminal conduct from the 2006 court, we instruct the lower court to deem the issue waived.

We recognize that Clayton Cotter bore the burden of perfecting the record and his failure may have rendered a collateral attack a more appropriate vehicle for relief. Nevertheless, because Cotter has served most or all of the 25 month sentence, we opt for the more expeditious procedure of a remand.

Assignment of Error 2: LFOs

Clayton Cotter also contends that the trial court erred when it imposed LFOs without considering his present or future ability to pay.

Courts may impose LFOs—such as court costs, DNA collection fees, and victim restitution—if a defendant has or will have the financial ability to pay them. RCW 10.01.160(3); RCW 9.94A.760(2); *State v. Curry*, 118 Wn.2d 911, 914-16, 829 P.2d 166 (1992). The trial court need not make a formal finding that the defendant has or will have the ability to pay. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). When

the court does make such a finding, the record must support it. *State v. Bertrand*, 165 Wn. App. 393, 403-05, 267 P.3d 511 (2011). This court reviews a trial court's determination of an offender's financial resources and ability to pay for clear error. *Bertrand*, 165 Wn. App. at 404 n.13; *Baldwin*, 63 Wn. App. at 312.

Clayton Cotter failed to preserve this issue for review. Until our Supreme Court decides otherwise, the rule established by each division of this court is that a defendant may not challenge a determination regarding his or her ability to pay LFOs for the first time on appeal. *State v. Duncan*, No. 29916-3-III, slip op. at 7-12 (Wash. Ct. App. Mar. 25, 2014); *State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496, 507-08, *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010, 311 P.3d 27 (2013). Thus, we decline to address this assignment of error.

If we were to reach this assignment of error, we would rule there was no error. In *Baldwin*, this court affirmed a trial court's finding that an offender had the present or likely future ability to pay LFOs where the only evidence to support it was a statement in the presentence report that the offender described himself as employable. At sentencing in this case, the trial court was informed that Clayton Cotter had been employed in construction.

Noting the large amount of restitution ordered, the trial court encouraged Clayton Cotter to earn his GED in order to obtain better work. The court recognized the LFOs

11

might pose a high financial burden. To this end, the court ordered a minimum payment of $25 a month. The trial court considered Cotter's financial ability to pay his LFOs and concluded that Cotter will later be able to pay.

The trial court also instructed Clayton Cotter to contact the court's clerk if payment proved difficult. At that point, Clayton may petition the court for remission under RCW 10.01.160(4), which states:

> A defendant who has been ordered to pay costs . . . may at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due.

The denial or granting of *that* motion would warrant appellate review.

## CONCLUSION

We remand for a determination of whether the 2006 sentencing court found the three offenses to constitute the same criminal conduct. If so, we instruct the lower court to give legal effect to that finding, and resentence Clayton Cotter accordingly. If there is no finding of same criminal conduct from the 2006 court, we instruct the lower court to deem the issue waived.

No. 31620-3-III
*State v. Cotter*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.